# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| ANTHONY P. POSTIGLIONE, | : | Bankruptcy No. 05-36919DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is Debtor's Motion to Voluntarily Dismiss this Chapter 7 Case ("Dismissal Motion"). It is opposed by creditors Gordon and Karen Eadie (the "Eadies") and supported by creditors Anthony Postiglione Sr. ("Postiglione Sr."), Robert Simpson ("Simpson"), and Donna M. Burke ("Burke"), each urging that creditors would be most benefitted by the position they have espoused. The Chapter 7 trustee has neither taken a position on the Dismissal Motion nor appeared at this or the prior hearing on Debtor's Motion to Convert the Chapter 7 Case to Chapter 11. For the reasons that follow, the Dismissal Motion shall be denied.

**BACKGROUND**[1]

On October 14, 2005 Anthony P. Postiglione ("Debtor") filed a Chapter 7 voluntary petition in bankruptcy. Gloria Satriale, Esquire ("Satriale") was appointed the Chapter 7 trustee (the "Trustee"). However, on the day of the § 341 meeting, Debtor filed a praecipe to convert the Chapter 7 to a Chapter 13 case. On January 6, 2006 the Eadies filed a Motion to Convert to Chapter 7 or in the Alternative, to Dismiss ("Eadie Motion"). The Eadie Motion alleged various breaches of fiduciary duty by reason of non-disclosure of assets and income. The Chapter 13 trustee filed a motion to dismiss shortly thereafter based on Debtor's failure to appear at the § 341 hearing or commence making payments under the Chapter 13 plan. After a hearing on the Eadie Motion on February 9, I entered an Order finding that Debtor was over the debt limits for relief under Chapter 13 and it would be in the best interests of creditors and the estate not to dismiss but rather to convert the case to Chapter 7 to allow a Chapter 7 trustee to conduct an impartial investigation of Debtor's assets, including Debtor's claim against the Eadies.[2] Debtor parried with a motion to convert

---

[1] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. Larson v. Gross Bank. 204 B.R. 500, 502 (W.D. Tex. 1996) (statements in schedules). See also In re Musgrove, 187 B.R. 808 (Bankr. N.D. Ga. 1995) (same); In re Leonard, 151 B.R. 639 (Bankr. N.D.N.Y. 1992) (same). Additionally the parties have agreed that the documentary evidence admitted in the prior hearing in this case held on March 23, 2006 may be considered.

[2] Satriale was again appointed the Trustee and on March 3, 2006 I approved her application to retain Paul Maschmeyer, Esquire to represent her in this case.

the Chapter 7 case to one under Chapter 11 which was opposed by the United States trustee and the Eadies. Finding Debtor's notion of reorganizing around his claim against the Eadies to provide an insufficient foundation for a Chapter 11 plan, I denied that motion after an evidentiary hearing on May 23, 2006. On June 2, 2006 Debtor filed the instant Dismissal Motion.

Debtor is the estranged husband of Megan E. Postiglione ("Megan") whose parents are the Eadies. Pursuant to an agreement (the "Agreement") with the Eadies, Debtor and Megan (the "Postigliones") resided in a house owned by the Eadies at 465 Clothier Springs Road, Phoenixville, Pennsylvania (the "Residence").[3] In February 2005, prior to the filing of the bankruptcy petition, Debtor filed a complaint in the Court of Common Pleas of Chester County against the Eadies and Megan (the "State Court Complaint") seeking a declaratory judgment of his rights under the Agreement (the "Litigation").[4] The Agreement recognizes that the Residence is in disrepair and that the Postigliones intend to improve it at their expense in consideration for the right to occupy the Residence for either 30 years or until the sale of the Residence, whichever occurs earlier.[5] Additionally the Agreement grants the Postigliones a right of first refusal prior to any sale and a credit on the purchase price for the improvements they have made. Moreover, it provides a formula by which the Postigliones

---

[3] Debtor continues to reside there although Megan has moved out.

[4] The State Court Complaint and Agreement were made part of the record at the May 23, 2005 hearing as Exhibit D-1. When questioned at his § 341 hearing, Debtor stated that his objective in filing the State Court Complaint was to obtain a declaration of his right to reside in the Residence, his right of first refusal upon its sale and the amount of his interest upon sale.

[5] The Residence is located on a 10-acre property used by the Eadies to grow nursery stock for their business.

may recover a portion of their investment from the proceeds of a sale to a third party. Debtor contends they have made over $550,000 in improvements. Notably the State Court Complaint seeks equitable relief in the form of a lien on the Residence for the advances made and a directive that no further liens may be placed on the Residence by the Eadies. The Eadies in turn have filed a counterclaim against Debtor, which has been scheduled as a disputed bankruptcy claim in the amount of $354,062.00, based on mechanics' liens, unpaid taxes and heating bills that Debtor failed to satisfy or pay with respect to the Residence as required by the Agreement.

After three evidentiary hearings in this case and in particular in connection with the Motion to Convert to Chapter 11, I have found that other than this equitable interest in the Residence and a cash fund of approximately $12,000 placed in a safety deposit box with Postiglione Sr.,[6] Debtor has no assets for distribution to creditors. The Eadies argue that a potential fund for distribution exists because of their offer to the Trustee to settle the State Court Complaint with a lump sum payment of $40,000 which when added to the cash, would form the basis of a distribution to creditors.[7] Debtor responds that the Trustee would sell the

---

[6] This asset was not disclosed by Debtor on his Schedules. Debtor testified that his lack of disclosure was based on his view that the cash was not his to keep. I find that explanation incredible. By transferring the cash to his father, he intended to place it out of the reach of his creditors. Even after he was made aware that this is an asset of his estate, he has continued to use it to pay support and other personal obligations. The Trustee was made aware of this asset at the § 341 hearing on March 23, 2006 but has taken no action to recover the funds.

[7] Eadies have also filed an objection to Debtor's exemptions which, they note, would allow the entire settlement proceeds to be available for the estate if granted. Debtor has scheduled unsecured nonpriority claims of $989,820 (albeit many are disputed) plus additional claims in an "unknown" amount. As this case was noticed as a "no asset" case, no bar date has been established. Nonetheless, priority claims of $3,611.57 and unsecured claims aggregating $256,524.96, one of which is held by Burke in the amount of $121,854.98, have been filed. Neither the Eadies nor Postiglione Sr. have filed a proof of claim.

value of the State Court Complaint short and creditors would be benefitted more if he controlled the Litigation. The desire to control the Litigation is what drove Debtor's motion to convert to Chapter 11 and animates the Dismissal Motion.

On March 23, 2005, the Trustee, with the assistance of counsel, conducted a § 341 hearing that lasted four hours. Exhibit OBJ-1. Several creditors or their counsel[8] were present. As the duration of the meeting indicates, Debtor was questioned extensively and the meeting record was left open for supplementary documents to be filed. However, notwithstanding those appearances, only Burke has stated a position on this Dismissal Motion, and none of the creditors nor the Trustee have appeared at the hearings in this case.

**DISCUSSION**

While Debtor does not cite any Code provision to support his request to voluntarily dismiss his case, it is generally agreed that § 707(a) is applicable. Turpen v. Eide (In re Turpen), 244 B.R. 431, 434 (BAP 8th Cir. 2000). That section states that a court may dismiss a Chapter 7 case, only after notice and hearing and for "cause." 11 U.S.C. § 707(a). The burden for establishing cause is on the moving party, in this case Debtor. Dionne v. Simmons (In re Simmons), 200 F.3d 738, 743 (11th Cir. 2000). Debtor has no absolute right to dismiss his case but must demonstrate why a dismissal is justified. In re Watkins, 229 B.R. 907, 909 (Bankr. N.D. Ill. 1999).

---

[8] Appearing were Burke and counsel to Dean and Karen Beeman, who were investors in the failed Fountainhead Fund LLC ("Fountainhead") run by Debtor with a partner and closed by the Securities and Exchange Commission. Also appearing was Liddle and Robinson, Debtor's former attorneys who have filed an unsecured claim of close to $100,000.

-5-

The decision whether to grant or deny a motion to dismiss a petition in bankruptcy lies within the discretion of the bankruptcy judge. <u>Petersen v. Atlas Supply Corp. (In re Atlas Supply Corp.</u>), 857 F.2d 1061,1963 (5th Cir. 1988). The bankruptcy court must balance the equities and consider the benefits and prejudice of dismissal. <u>Appeal of Kennedy</u>, 179 B.R. 782, 785 (M.D. Pa. 1995). Some of the factors that courts have considered in determining a request to voluntarily dismiss are (1) whether all creditors have consented; (2) whether the debtor is acting in good faith; (3) whether the dismissal would result in a prejudicial delay to payment; (4) whether dismissal would result in a reordering of priorities; (5) whether there is another proceeding through which the payment of claims can be handled; and (6) whether an objection to discharge, an objection to exemptions, or a preference claim is pending. <u>Turpen</u>, 244 B.R. at 434 (citing cases). Ordinarily, where dismissal will prejudice creditors, the motion will be denied. Such prejudice exists where assets which would otherwise be available to creditors are lost because of the dismissal. <u>Kennedy</u>, 179 B.R. at 785.

In the Dismissal Motion, Debtor avers that the case should be dismissed because the Court, having found that Debtor had no assets to form the basis of a Chapter 11 reorganization, should also find there is no basis for a Chapter 7 liquidation. Testifying in support of the Dismissal Motion, Debtor stated that it was in the best interests of his creditors to allow him to retain control of his only asset, the equitable interest in the Premises, in order to maximize his recovery through the Litigation. He also noted that other than the Eadies who were acting in their self-interest to settle his claims against them quickly and

-6-

inexpensively with the Trustee, no other creditor opposed the dismissal. Rather Postiglione Sr. and Simpson supported it.[9]

Given that a Chapter 7 liquidation is intended for the benefit of creditors, it is intuitive that their views should inform a court's decision on a motion to voluntarily dismiss the bankruptcy case. This is particularly true where, as here, Debtor has availed himself of the protection of the bankruptcy law for 18 months. Regrettably I am unable to discern how creditors truly feel about this case based on the information I have been provided. The Eadies and Postiglione Sr., both creditors, are acting in their own self-interests. I agree with Debtor that the Eadies' interests are contrary to the interests of other creditors since they are the source of the distribution and are motivated by a need to minimize, not maximize, the settlement proceeds to be distributed to creditors. Postiglione Sr., who is improperly holding estate assets at Debtor's behest, has the best interests of his son, not creditors, in mind when determining his position on the Dismissal Motion.

The only seemingly impartial creditors heard from are Simpson and Burke who have claims arising from investments they made in Fountainhead.[10] Their reason for supporting the Dismissal Motion reflects a basic misunderstanding with the relevant facts. Simpson states:

> [R]eal Estate valued in excess of 2.1 million dollars will be settled shortly in a court room presided over by Judge Shankin, his ruling will enable Mr. Postiglione to pay his debts, based on his contract with the Eadies and his monetary investment

---

[9] Burke changed her position after the hearing as discussed below.

[10] Query whether they are creditors of Debtor or of the LLC, an issue that presumably will be addressed by the Trustee.

>granting him compensation by the Eadies, per their contractual written agreements.

Doc. No. 81. Simpson stated that he could not come to court due to a "very serious operation as I am confined to bed rest for one month." Id. Accordingly, he could not be examined as to the source of his erroneous view that the State Court Action would result in the payment of Debtor's debts. The other investor, Burke, also weighed in on the Dismissal Motion. Initially she opposed it but later changed her position stating that she was unaware of the pending litigation in Chester County (i.e., the State Court Complaint) which she now realizes represents the best potential for recovery of her claims. Doc No. 86. She also was unavailable to attend the hearing so the source of her enlightenment could not be ascertained. However, it is fair to conclude that either Debtor or someone on Debtor's behalf contacted these creditors to solicit their support. It is also fair to conclude that they were not given an accurate picture of the Litigation which merely seeks a declaratory judgment as to Debtor's rights in the Residence upon its sale versus a claim for damages. As framed, the State Court Complaint, even if successful, would not provide any funds to pay creditors. This manipulation of the creditors not only fails to achieve its purpose of demonstrating support for the Dismissal Motion but provides further support for the Eadies' contention that Debtor is acting in bad faith in this bankruptcy case.

In point of fact, the only means to derive funds from the Litigation is through a settlement with the Eadies in which they would agree to pay for the termination of Debtor's

rights in the Premises.[11]  This is the basis of the offer made to the Trustee but never made to Debtor.  However, as neither the Trustee nor her counsel have appeared nor stated a position concerning the Dismissal Motion, I do not have the benefit of knowing her view as to whether continuation of this case is in the best interests of creditors.

This case was converted to Chapter 7 on February 9, 2006 over Debtor's objection. I specifically stated that I was doing so to allow a trustee to investigate the assets given my recognition that the moving creditor, the Eadies, did not represent the interests of other creditors.  The Trustee, appointed on February 14, hired counsel on March 3, and conducted a four hour § 341 meeting on March 23.  Her silence is inexplicable.  According to Eadies' counsel, she is awaiting the Court's decision before she starts to administer assets in this case.[12]

It is long been recognized that a trustee has the right to object to dismissal.  In re Klein, 39 B.R. 530, 534 (Bankr. E.D.N.Y. 1984) (citing cases).  Indeed where creditors neither have the interest, resources or understanding to weigh all relevant factors, the trustee fills an important role in protecting such creditor interests by taking a position on such a motion.  When I converted this case to Chapter 7, it was with the view that a trustee evaluate whether there are meaningful assets to form a fund for creditor recoveries.  While the Eadies have offered $40,000 to settle the State Court Complaint, I have no way of knowing whether

---

[11] The State Court Complaint does not seek to compel the Eadies to sell the Premises as the Agreement does not give Debtor the right to force a sale.  Rather it provides only what will happen when they do decide to sell.

[12] That explains why Debtor still has control over certain cash assets of the estate and has been using them.

the Trustee believes that offer to be a basis to begin administering this as an asset case.[13] Clearly if Debtor's exemptions are denied, another $10,000 of any settlement with the Eadies will be available for creditors. Whether that makes a difference in the Trustee's analysis remains to be seen. There are almost $1 million of scheduled claims exclusive of the ones listed as "unknown."[14] Whether a meaningful distribution can be made after expenses of administration in order to justify the continuation of the case requires an analysis that only the Trustee can perform. Presumably this Order rejecting the Dismissal Motion will stimulate the Trustee to take some action.

The Eadies point to other factors to support their objection to the Dismissal Motion. They have filed a objection to Debtor's exemptions and a complaint objecting to his discharge, factors that have negated dismissal of a Chapter 7 case. They have provided evidence of Debtor's failure to properly disclose his assets on his Schedules and his improper expenditure of estate assets not turned over to the Trustee. I now discern what appears to be Debtor's solicitation of support for the Dismissal Motion by misleading creditors into the belief that a large settlement from which his debts can be paid is forthcoming. While it is conceivable that Debtor could achieve a settlement of the Litigation with the Eadies that would yield a monetary recovery, it is significantly less likely to occur out of bankruptcy

---

[13] That is not to assume that the $40,000 offer is or is not reasonable value for the asset. As I assured counsel to Postiglione Sr., a settlement of the State Court Complaint will be on notice and hearing and will require the Trustee to prove that she has received fair value for the asset. Given Debtor's view that the Trustee will settle too cheaply, I expect that the Rule 9019 motion will be actively contested.

[14] Whether all claims are of equal merit given that some represent investments in the Fountainhead LLC has not been explored. Supra n. 10.

given Debtor's view of his entitlements and it is significantly less likely to be passed on to creditors given Debtor's history of concealing assets. The potential of assets that would not be otherwise available from another proceeding as well as the delay in payment mitigate against granting the Dismissal Motion.

In short, I will deny the Dismissal Motion. However, I will not allow the use of this case as a vehicle for relief for the Eadies without regard to there being a real benefit to creditors. The Trustee will do her due diligence to determine whether this case, still nominally a no-asset case, shall be administered as an asset case. If a settlement with the Eadies can provide for creditor recoveries, she will negotiate same and bring the appropriate motion. Hopefully creditors will wish to be heard. The Trustee will also perform her statutory duty with respect to the cash assets that the Eadies have brought to the Court's attention and any other assets of the estate that have not been turned over to the Trustee. Unless the Trustee brings on a motion sooner, a status conference will be held at which the Trustee, Debtor and all interested parties shall appear and be heard concerning the future of this bankruptcy proceeding.[15]

_____
    DIANE WEISS SIGMUND
    Chief U.S. Bankruptcy Judge

Dated: July 7, 2006

---

[15] Pending the foregoing, I will hold the Eadies' objection to Debtor's exemptions and the complaint objecting to Debtor's discharge in suspense. If the Trustee does not elect to administer assets in this case, I will dismiss it, thereby rendering these two matters moot.

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| ANTHONY P. POSTIGLIONE, | : | Bankruptcy No. 05-36919DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 7th day of July 2006, upon consideration of Debtor's Motion to Voluntarily Dismiss this Chapter 7 Case ("Dismissal Motion"), after notice and hearing and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that:

1. The Dismissal Motion is **DENIED**.

2. A Status Conference will be held on **AUGUST 15, 2006 at 9:30 a.m.** in the Robert N.C. Nix, Sr. Federal Courthouse, 2nd floor, 900 Market Street, Courtroom #3, Philadelphia, PA at which the Trustee, Debtor and all interested parties shall appear and be heard concerning the future of this bankruptcy proceeding.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

In re Anthony P. Postiglione - Bankruptcy No. 05-36919DWS

<u>Copies to</u>:

David A. Scholl, Esquire
Regional Bankruptcy Center
Law Office of David A. Scholl
#6 St. Albans Avenue
Newtown, PA  19073

John Albert Wetzel, Esquire
One South Church Street
Suite 400
West Chester, PA  19382

Gloria Satriale, Esquire
One McKinley Lane
Chester Springs, PA 19425

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107

-2-